UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

KATRINA MACINSKI,

                    Plaintiff,

v.                                                                 3:25-CV-1390
                                                                   (GTS/ML)
NEW YORK STATE OFFICE FOR PEOPLE
WITH DEVELOPMENTAL DISABILITIES
(OPWDD); and VINCENT SCHMIDT, Region 2
Director for the New York State Office for People
With Developmental Disabilities, in his Official
Capacity Only,

                    Defendants.

_____

APPEARANCES:                                        OF COUNSEL:

OFFICE OF RONALD R. BENJAMIN            RONALD R. BENJAMIN, ESQ.
  Counsel for Plaintiff
P.O. Box 607
126 Riverside Drive
Binghamton, NY 13902-0607

HON. LETITIA A. JAMES                          BRIAN M. SEACHRIST, ESQ.
NEW YORK STATE ATTORNEY GENERAL    Assistant Attorney General
  Counsel for Defendants
44 Hawley Street, 17th Floor
Binghamton, NY 13091

300 South State Street, Suite 300              ELIZABETH V. LOMBARDI, ESQ.
Syracuse, NY 13202                             Assistant Attorney General

GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

     Currently before the Court, in this disability discrimination action filed by Katrina

Macinski ("Plaintiff") against the New York State Office for People with Developmental

Disabilities ("OPWDD") and Vincent Schmidt (collectively "Defendants"), is Defendants'

motion to dismiss Plaintiff's Complaint for lack of subject matter jurisdiction pursuant to Fed. R.

Civ. P. 12(b)(1) and for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  (Dkt. No. 8.)

For the reasons set forth below, Defendants' motion is granted in that the Court finds it lacks

subject matter jurisdiction over Plaintiff's claims against Defendants.

I.     **RELEVANT BACKGROUND**

    A.     **Plaintiff's Complaint**

Generally, in Plaintiff's Complaint,[1] she asserts two claims: (1) a claim that Defendants

failed to accommodate her disability in violation of the Americans with Disabilities Act

("ADA"); and (2) a claim that Defendants violated her due process rights by refusing to let her

return to work without holding any hearing or finding her guilty of any charge in violation of the

Fourteenth Amendment and 42 U.S.C. § 1983.  (Dkt. No. 2.)

    B.     **Parties' Briefing on the Defendants' Motion to Dismiss**

        1.     **Defendants' Memorandum of Law**

Generally, in their motion, Defendants make four arguments.  (Dkt. No. 8, Attach. 1.)

First, Defendants argue that Plaintiff's claims are barred by the Eleventh Amendment to the

extent she seeks monetary damages.  (*Id.* at 11-13.)

Second, Defendants argue that Plaintiff's claims against Defendant Schmidt (which are

asserted against him in his official capacity) are also barred by the Eleventh Amendment because

she does not allege an ongoing or prospective future violation of federal law, but instead seeks to

---

[1]     Plaintiff's Complaint was originally filed with the Supreme Court in Broome County on July 15, 2025, but was removed to this Court on October 6, 2025.  (Dkt. Nos. 1, 2.)

remedy the denial of her reasonable accommodation request and failure to provide her with a disciplinary hearing. (*Id.* at 13-16.)  More specifically, Defendants argue that Plaintiff has sought not injunctive relief but only an order directing Defendants to provide a reasonable accommodation and to reinstate her to her position. (*Id.* at 13-16.)

Third, Defendants argue that Plaintiff's failure-to-accommodate claim must be dismissed on the merits because (a) she has failed to allege facts plausibly suggesting that she would be able to perform the essential functions of her job with her requested 80% telecommuting accommodation (given that telecommuting to that extent would prevent her from coordinating in person with other employees, accessing documents located in the office, collaborating and team-building with coworkers, and would compromise her supervisor's ability to supervise her), (b) her requested accommodation would impose an undue hardship on Defendants, and (c) Defendants offered Plaintiff an alternative reasonable accommodation (specifically, a private office with headphones to cancel noise) as well as the agency-wide policy that allows employees to telecommute up to 50% of the time. (*Id.* at 16-21.)

Fourth, Defendants argue that Plaintiff's due process claim must be dismissed because (a) the claim is not ripe given that Plaintiff's employment has not yet been terminated and she has, during the pendency of this action, received a Notice in compliance with her due process rights, (b) she has not plausibly alleged that she was "de facto terminated" given that she has not alleged in what manner Defendants have supposedly refused to allow her to return to work, and (c) she has failed to plausibly suggest that her due process rights were violated in that she has not alleged facts as to why N.Y. Civ. Serv. L. § 75 would apply to her (and Defendants have in fact initiated termination proceedings pursuant to the more relevant N.Y. Civ. Serv. L. § 73 related to

3

termination due to prolonged continuous absence), and, in any event, an Article 78 proceeding provides an adequate post-deprivation remedy that bars her claim under the Fourteenth Amendment.  (*Id.* at 21-27.)

### 2. Plaintiff's Opposition Memorandum of Law

Generally, in opposition to Defendants' motion, Plaintiff makes three arguments.  (Dkt. No. 10.)  First, Plaintiff argues that disputed facts preclude any dismissal on either a jurisdictional or merits basis, because (a) questions of fact make conducting the abrogation analysis at this point improper, and (b) she has alleged facts to state a prima facie case pursuant to the ADA given that her request for 80% telecommuting would not have eliminated essential functions of her job and Defendants failed to engage in the interactive process.  (*Id.* at 5-7.)

Second, Plaintiff argues that her claims can be pursued against Defendant Schmidt in his official capacity because she has alleged an ongoing failure to accommodate her disability and to permit her to return to work.  (*Id.* at 8-9.)

Third, Plaintiff argues that, as to her due process claim, there is no requirement for her to exhaust her available administrative remedies before filing that claim, and Article 78 does not provide an adequate post-deprivation remedy because Defendants' conduct was intentional and carried out pursuant to an established state procedure (and thus she was entitled to *pre-*deprivation process).  (*Id.* at 9-14.)

### 3. Defendants' Reply Memorandum of Law

Generally, in reply, Defendants make four arguments.  (Dkt. No. 14.)  First, Defendants argue that Plaintiff's claims for monetary damages are barred by the Eleventh Amendment and

there is nothing inappropriate about the Court making that determination on a motion to dismiss. (*Id.* at 5-6.)

Second, Defendants argue that Plaintiff's claims against Defendant Schmidt in his official capacity are also barred by the Eleventh Amendment because (a) Plaintiff's vague allegations of factual disputes and a "pattern of disability discrimination" are not supported by the allegations in the Complaint, (b) her own Complaint suggests only past violations, and (c) Plaintiff has not responded to the argument that there is no plausible allegation that Defendant Schmidt has the ability to reinstate her to her position. (*Id.* at 6-8.)

Third, Defendants argue that Plaintiff has failed to state a prima facie claim of disability discrimination pursuant to the ADA. (*Id.* at 8.)

Fourth, Defendants argue that Plaintiff's due process claim must be dismissed because (a) the availability of adequate post-deprivation procedures is not a requirement to exhaust administrative remedies but rather proof that no constitutional violation has taken place, (b) Plaintiff has not yet been terminated and, in any event, Defendants have initiated proper pre-termination proceedings in accordance with New York law, (c) in the event Plaintiff is terminated, no due process claim could be brought because she will be afforded those pre-termination proceedings, and (d) Article 78 would provide an adequate post-deprivation remedy. (*Id.* at 8-12.)

## II.   GOVERNING LEGAL STANDARDS

### A.   Legal Standards Governing a Motion to Dismiss Under Fed. R. Civ. P. 12(b)(1)

"It is a fundamental precept that federal courts are courts of limited jurisdiction." *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). Generally, "[a] case is properly

dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000) (citing Fed. R. Civ. P. 12[b][1]).  "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings." *Makarova*, 201 F.3d at 113 (citing *Kamen v. American Tel. & Tel. Co.*, 791 F.2d 1006, 1011 [2d Cir. 1986]).

More specifically, "[w]hen . . . a jurisdictional challenge under Fed. R. Civ. P. 12(b)(1) is addressed to the complaint, a court accepts as true all the factual allegations in the complaint and must draw all reasonable inferences in favor of the plaintiff." *Lunney v. U.S.*, 319 F.3d 550, 554 (2d Cir. 2003) (citing, *inter alia*, *Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton Coll.*, 128 F.3d 59, 63 [2d Cir. 1997]); *see also Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005) (stating that a district court may properly dismiss a case for lack of subject matter jurisdiction under Rule 12[b][1] only after "[c]onstruing all ambiguities and drawing all inferences" in a plaintiff's favor) (citing *Makarova*, 201 F.3d at 113).

However, when a defendant challenges the factual basis for the plaintiff's assertion of jurisdiction, "[j]urisdiction must be shown affirmatively, and that showing is not made [merely] by drawing from the pleadings inferences favorable to the party asserting it." *Shipping Fin. Servs. Corp v. Drakos*, 140 F.3d 129, 131 (2d Cir.1998); *accord, APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003); *see also Robinson v. Gov't of Malaysia*, 269 F.3d 133, 140 (2d Cir. 2001) ("In a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), the defendant may challenge either the legal or factual sufficiency of the plaintiff's assertion of jurisdiction, or both. . . . If the defendant challenges only the legal sufficiency of the plaintiff's jurisdictional allegations . . . , the

6

court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff . . . .  But where evidence relevant to the jurisdictional question is before the court, the district court . . . may refer to that evidence.") (internal quotation marks and citations omitted).

In such a case, "[a] plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists."  *Makarova*, 201 F.3d at 113 (citing *Malik v. Meissner*, 82 F.3d 560, 562 [2d Cir. 1996]); *see also Lunney v. United States*, 319 F.3d 550, 554 (2d Cir. 2003) ("Plaintiffs bear the burden of showing by a preponderance of the evidence that subject matter jurisdiction exists.") (internal quotation marks omitted).

**B.      Legal Standards Governing a Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6)**

It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim.  *Jackson v. Onondaga Cty.*, 549 F. Supp.2d 204, 211 nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J.) (adopting Report-Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, some elaboration regarding that ground is appropriate.  Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2) [emphasis added].  In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement

7

to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp. 2d at 212 n.20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp. 2d at 212 n.17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F. Supp. 2d at 212 n.18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F. Supp. 2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp. 2d at 213 n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). In doing so, the Court

8

"retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 560-61, 577.  Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim.  *Id*. at 555-70.  The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]."  *Id*. at 555.  More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true.  *Id*.

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . .  [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (internal quotation marks and citations omitted).  However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id*., it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.

9

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal*, 129 S. Ct. at 1949 (internal citations and alterations omitted).  Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

Finally, a few words are appropriate regarding what documents are considered when a dismissal for failure to state a claim is contemplated.  Generally, when contemplating a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the four corners of the complaint may be considered without triggering the standard governing a motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case.[2]

---

[2]     *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC*, No. 10-573, 2011 WL 2135734, at *1 (2d Cir. June 1, 2011) (explaining that conversion from a motion to dismiss for failure to state a claim to a motion for summary judgment is not necessary under Fed. R. Civ. P. 12[d] if the "matters outside the pleadings" in consist of [1] documents attached to the complaint or answer, [2] documents incorporated by reference in the complaint (and provided by the parties), [3] documents that, although not incorporated by reference, are "integral" to the complaint, or [4] any matter of which the court can take judicial notice for the factual background of the case); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that a district court considering a dismissal pursuant to Fed. R. Civ. 12(b)(6) "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. . . .  Where a document is not

## III.    ANALYSIS

After careful consideration of whether Plaintiff's allegations are sufficient to establish subject matter jurisdiction, the Court answers this question in the negative for reasons stated in the Defendants' memoranda of law.  *See, supra,* Parts I.B.1 and 3 of this Decision and Order.  To those reasons, the Court adds the following analysis (which is intended to supplement, and not supplant, Defendants' reasons).

Defendants argue that the Court lacks subject matter jurisdiction over Plaintiff's claims against them for two reasons: (1) as to all claims against Defendant OPWDD and those for monetary damages against Defendant Schmidt in his official capacity, the Eleventh Amendment provides immunity and there is no indication that such immunity has been abrogated or waived; and (2) as to claims against Defendant Schmidt in his official capacity for injunctive or declaratory relief, Plaintiff has not alleged that any such relief is prospective and based on an ongoing violation of federal law as required to confer subject matter jurisdiction.

---

incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint. . . . However, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document.  It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.") [internal quotation marks and citations omitted]; *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (internal quotation marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nevertheless take the document into consideration in deciding [a] defendant's motion to dismiss, without converting the proceeding to one for summary judgment.") (internal quotation marks and citation omitted).

11

Plaintiff's claims against Defendant OPWDD and her claims against Defendant Schmidt in his official capacity to the extent she seeks monetary damages are barred by the Eleventh Amendment. Defendant OPWDD has been recognized as being an arm of the State of New York, and therefore is entitled to immunity where, as here, there is no indication that such immunity has been abrogated or waived. *Hamzik v. Off. for People with Developmental Disabilities*, 859 F. Supp. 2d 265, 275-76 (N.D.N.Y. 2012) (Hurd, J.). State officials sued in their official capacity are also entitled to immunity on claims seeking monetary damages or retrospective injunctive or declaratory relief. *Wells v. Harper*, 25-CV-1535, 2026 WL 89965, at *8 (N.D.N.Y. Jan. 13, 2026) (D'Agostino, J.) (citing *Kentucky v. Graham*, 473 U.S. 159, 169 [1985]). Again, no allegations or arguments have been presented to suggest that Defendants have otherwise waived their immunity or consented to suit as to Plaintiff's claims.

The only relevant exception to the Eleventh Amendment is that which is found in *Ex parte Young*, which permits suit against a state official in their official capacity where the claim seeks prospective relief "to end an ongoing violation of a federal law." *T.W. v. New York State Bd. of Law Examiners*, 110 F.4th 71, 91 (2d Cir. 2024). Thus, "[i]n determining whether a litigant's claim falls under the *Ex parte Young* exception, we ask two questions: whether the complaint (1) alleges an ongoing violation of federal law; and (2) seeks relief properly characterized as prospective." *T.W.*, 110 F.4th at 91 (citing *Vega v. Semple*, 963 F.3d 259, 281 [2d Cir. 2020]).

As to Plaintiff's ADA claim, these criteria are not met. The relevant alleged violation of federal law is the denial of Plaintiff's request for reasonable accommodations on May 19, 2024. This is a discrete violation that was complete as of the day of the denial, and it does not

12

somehow become an ongoing violation of federal law merely because Plaintiff continues to not receive the requested accommodation.  *Keneston v. New York State Off. of the State Comptroller*, 24-CV-0136, 2026 WL 1480354, at *18 (N.D.N.Y. May 27, 2026) (Suddaby, J.); *cf. Francis v. Wyckoff Heights Med. Ctr.*, 177 F. Supp. 3d 754, 777 (E.D.N.Y. 2016) (finding that denial of reasonable accommodation was a discrete employment action rather than a continuing violation for the purposes of assessing timeliness of claim); *Gomez v. New York City Police Dept.*, 191 F. Supp. 3d 293, 302 (S.D.N.Y. 2016) (same).  Relatedly, the relief that Plaintiff seeks related to this claim is "an order directing OPWDD to make reasonable accommodation for plaintiff's disability and to reinstate [her] to her position with all back pay and associated benefits awarded to her."  (Dkt. No. 2, at ¶ 26.)  This relief seeks to remedy past violations (i.e., the denial of her accommodations request on May 19, 2024) and therefore cannot be considered prospective in nature.[3]  *See In re Deposit Ins. Agency*, 482 F.3d 612, 618 (2d Cir. 2007) (noting that *Ex parte Young* does not extend to situations where "the relief is retrospective or designed to compensate for a past violation of federal law").

Moreover, it is not clear from Plaintiff's Complaint that Defendant Schmidt possesses the authority to provide the requested relief, i.e., by granting her a reasonable accommodation.  *See Sutter v. Dibello*, 18-CV-0817, 2019 WL 4195303, at *8 (E.D.N.Y. Aug. 12, 2019) (finding *Ex*

---

[3]     The Court notes that Plaintiff's request for reinstatement to her position is based on allegations that Defendants terminated her employment in a *de facto* manner by refusing to allow her to return to work on the multiple occasions she has sought to do so.  (Dkt. No. 2, at ¶ 29.) However, this *de facto* termination (and thus the need for reinstatement) is not related to her ADA claim, because that claim appears to be premised solely on the denial of her request for accommodations, and she has not alleged facts plausibly suggesting that the refusal to allow her to return to work was based on discrimination related to her disability or in retaliation for filing a complaint regarding the denial of her accommodations request.  As a result, the Court does not consider this request for relief as being relevant to the assessment of Plaintiff's ADA claim.

*parte Young* exception did not apply in situation where the complaint did not allege facts plausibly suggesting that any defendant had the authority to order that the plaintiff be provided with a reasonable accommodation if she was successful on her claim), Report-Recommendation adopted by 2019 WL 4193431 (E.D.N.Y. Sep. 4, 2019).  Plaintiff alleges that Defendant Schmidt is the "Region 2 Director" for Defendant OPWDD, but does not allege pertinent facts such as (a) whether her own position was within Region 2, (b) whether Defendant Schmidt had any sort of supervisory or administrative authority related to the terms or conditions of her employment as a general manner, or (c) whether Defendant Schmidt had any sort of authority over decisions whether to grant or deny reasonable accommodations requests, either generally or specifically as to Plaintiff.  The only allegations she provides related to the reasonable request decision is that Andrise Mongerad (whose title and position is not alleged) was the individual who seemingly was supposed to contact Plaintiff about her request and was also the individual who ultimately denied that request. (Dkt. No. 2, at ¶¶ 17, 19.)  Notably, although Defendants raised this failure to plead facts sufficient to plausibly suggest authority as one of the arguments in favor of dismissal, Plaintiff did not provide any response to that specific point or attempt to clarify Defendant Schmidt's authority.  As discussed above, it is Plaintiff's burden to show the existence of subject matter jurisdiction, and she has not done so here.

As to Plaintiff's due process claim, her request for reinstatement (to the extent that it could be considered to be injunctive relief) to remedy the *de facto* termination caused by Defendants' alleged refusal to allow her to return to work presents a somewhat closer case. Plaintiff alleges that she has not been provided with the hearing and process required before the termination of employment of certain permanent employees under N.Y. Civ. Serv. L. § 75,

14

which could potentially be viewed as an ongoing violation.  However, the relevant ongoing violation must be of *federal law* specifically, so any continued failure to comply with the specific process required by that state law is not sufficient.

Further, Plaintiff's allegations indicate that her due process rights were violated because Defendants failed to provide the pre-termination process required by that state law before it engaged in a *de facto* termination of her employment by "refusing to allow her to return to work." (Dkt. No. 2, at ¶¶ 29, 31.)  However, if, as Plaintiff alleges, she has already been terminated from her employment, then the alleged violation of her due process rights has already occurred; Defendants' termination of her employment without affording the relevant *pre-termination* process due would be a past action, not an ongoing violation.  In that respect, seeking reinstatement of her position (i.e., a reversal of her termination) is merely seeking to redress a past violation (i.e., termination without providing the required pre-termination process).

Plaintiff's only response to Defendants' arguments regarding whether *Ex parte Young* applies to this claim is that there is a continuing violation because Plaintiff is not being allowed to return to work.  (Dkt. No. 10, at 9.)  But the fact that Plaintiff remains unable to work does not in any way lead to a finding that the alleged violation of federal law is ongoing; Plaintiff has conflated the violation itself (the failure to comply with the process outlined in N.Y. Civ. Serv. L. § 75 before terminating her employment) with the effects of that violation (her ongoing inability to work in her position).  In short, because Plaintiff has specifically alleged that her employment has already been terminated in a *de facto* manner as a result of Defendants' refusal to allow her to return to work and that termination without the prior process due under N.Y. Civ. L. § 75 would constitute the alleged violation of her due process rights, there is no alleged

15

ongoing violation of federal law that would be redressed by a decision on Plaintiff's claim and the relief sought is retrospective.

Moreover, regardless of whether the relief sought related to Plaintiff's due process claim can be considered to be prospective and related to remedying an ongoing violation of federal law, that claim faces the same deficiency as her ADA claim related to whether Defendant Schmidt possesses the authority to grant her the relief requested. As discussed above, the fact that Defendant Schmidt was the "Region 2 Director" plausibly suggests no information about what authority he possessed, much less whether he specifically possessed the authority to grant Plaintiff a hearing in accordance with N.Y. Civ. Serv. L. § 75 related to the alleged *de facto* termination or to reinstate her employment. As a result, the Court finds that Plaintiff's claims against Defendant Schmidt in his official capacity for relief other than monetary damages are also barred by the Eleventh Amendment.

Because the Court lacks subject matter jurisdiction over Plaintiff's claims as to either Defendant, Plaintiff's Complaint must be dismissed without prejudice.

**ACCORDINGLY**, it is

**ORDERED** that Defendants' motion to dismiss Plaintiff's Complaint (Dkt. No. 8) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 2) is **DISMISSED** without prejudice for lack of subject-matter jurisdiction.

Dated: July 21, 2026
      Syracuse, New York

Glenn T. Suddaby
U.S. District Judge

16